## Lessee of George Sherman *against* Priscilla Dill.

Articles of agreement for the sale of lands, whereby it was agreed that on payment of money at a future day, the vendee should receive a deed, held not sufficient to divest the legal estate, though the words do grant, bargain and sell were inserted therein, and bonds given for the purchase money.

A deposition taken on a caveat before the Board of Property, not allowed in evidence, though the witness was cross examined by the adverse party, and is since dead.

EJECTMENT for 264 acres of land in Manheim township.

Conrad Sherman claiming the lands in question under divers *mense conveyances, on the 17th December 1792, entered into articles of agreement with George Fridley ; where- [*296 by the said Sherman in consideration of 950l. to be paid as therein after is set forth, grants, bargains and sells to the said Fridley, his heirs, and assigns, a certain tract of land whereon he then lived, called " Killdowney," containing 270 acres 101 perches, surveyed to James Hall on 20th March 1768, under an application dated 25th April preceding, excepting thereout about 6 acres. The money to be paid as follows : Fridley to pay 150l. on the 1st March 1793, and on the same day to assign to Sherman a bond of Balson Titler, conditioned for the payment of 100l. on the 1st April 1795, with interest from 1st April 1793 ; 60l. to be paid on the 1st March 1795, and the residue in yearly payments of 60l., for which said yearly sums Fridley was to give his bonds. On making the first payment and assigning over Titler's bond, and giving the bonds for the stipulated sums, Sherman agreed to make over the said land to Fridley, by a sufficient deed of conveyance, and give as good and clear a right and title, as Sherman had for the same.

The bonds were given accordingly on the same day, and Fridley received possession of the premises. Afterwards he sold 100 acres, part thereof to his brother Frederick Fridley ; and on the 29th March 1794, entered into an agreement with John Caruthers, in behalf of himself and Thomas Dill, (the husband of the defendant since deceased) whereby in consideration of 48l., paid in part of 700l., the stipulated price, he agreed to convey to Caruthers and Dill, and their heirs, 164 acres, the residue of the tract, held under Jacob Sherman. And it was further agreed that 200l., including the 48l. already paid, should be discharged on the 15th May then next, and that bonds should be given with sufficient security for the remaining payments.

Jacob Sherman afterwards commenced an action against George Fridley, on the bond for 150l., payable on 1st March 1793, which came on to trial in the Circuit Court on the 29th

[Sherman's Lessee *v.* Dill.]

April 1800.   Fridley set up a defence, alledging that the title was defective, and that his warranty was only special; 5 1l. 10s. was indorsed as paid on the bond.   Sherman under the recommendation of the court, proposed to execute a deed for the land with general warranty, and accordingly filed such deed with the clerk of the court.   Judgment was then entered, and a *fieri facias* issued returnable to March term 1801, upon which the lands in question containing 260 acres, more or less, were levied on, condemned, and afterwards sold in pursuance of a *venditioni exponas* to George Sherman, the lessor of the plaintiff, for 2701 dollars, on the 22d August 1801.   The new sheriff, under an order *297] *of the court, executed a deed on the 23d April 1803, which was duly acknowledged in open court.

The defendant's counsel contended, that her possession could not be disturbed, as her husband and Caruthers had performed every thing incumbent on them under the agreement with George Fridley, and were still willing to perform the same.   They offered evidence to this point, insisting that the words grant, bargain and sell, in the present tense, vested an absolute estate in fee simple in George Fridley in the premises, and here bonds were taken by Jacob Sherman in pursuance of the articles.   His covenant to make over the land by a sufficient deed of conveyance at a future day, does not derogate from his actual grant, and consequently every lawful act done by George Fridley was fully validated.   The title was devested from Jacob Sherman by the form of his articles.   Caruthers and Dill relied thereon, when they made their contract with the person who was in complete possession.   And the vendee under the sheriff only acquires the right and interest of the party for whose debts the land was sold at or before the taking thereof in execution.   1 Dall. St. Laws, 70, § 4.

The plaintiff's counsel excepted to the testimony as inadmissible.   There can be no pretext of deception as to the interest of George Fridley.   The second agreement referred to the articles entered into with Jacob Sherman, and therefore put the purchasers upon the inquiry.   It amounted to implied notice, if there was not actual notice to them before, of which there can be little doubt.

The articles between Jacob Sherman and George Fridley were never intended by either of them as an actual grant.   They could not lead to any mistake; because it is expressly provided therein, that Fridley was not to get his deed, until he had made his first payment of 150l. and assigned over Titler's bond.   Here the land has been sold by the sheriff, upon a judgment obtained by reason of the non-payment of this 250l.   A paper containing words of present contract, with an agreement that the lessee should take possession immediately, and that a lease should be executed at a future day, operates only as an agreement for a lease, and not as a lease itself.   1 T. R. 755.   S. P. Doc *ex*

Dinn. Cooke *v.* Care, 2 T. R. 739. The execution of the bonds can make no difference on the present occasion.

*Per Cur.* The admissibility of the testimony offered, depends solely on the legal operation of the articles of agreement between Jacob Sherman and George Fridley. If the former conveyed *thereby his legal interest in the land to the latter, then the evidence should be received ; because, when the [*298 vendee had fairly contracted with others, his remaining interest in the land was subject to be sold by the sheriff for his debts, and not the right he had parted with.

In every agreement the intention of the parties is to be considered ; Plowd. 290, 292. 3 Burr. 1477. And it is said, 4 Term Rep. 335, there is no rule of law so reluctant, that it will not recede from words, to enforce the meaning of the parties. 1 Atky. 8. If the intention is clear, that an estate should pass, courts will construe deeds in support of that intention, different from the formal nature of those deeds ; and on the other hand, an instrument for the sale of lands has been construed as an agreement to convey, though it contained words in the present tense, or "do sell" "and deliver," because it accorded with the meaning of the parties. The present case bears a strong analogy to Stouffer's lessee *v.* Coleman, which was determined at Lancaster, on great argument, at *Nisi Prius.* There bonds had been given by the vendee, which were prosecuted to judgment. As to the contract made with Caruthers and Dill, it is stated therein, that the lands were held under Jacob Sherman ; and it is fully settled, that whatever is sufficient to put the party upon an inquiry, is good notice in equity. 2 Fonbla. 255.

The true intention of these contracting parties cannot be mistaken. The payment of the 150l. and the assignment of the 100l. bond, were to precede the making over the land by a sufficient deed of conveyance ; and the performance of those acts was postponed until the 1st March 1793. We cannot therefore hesitate to say, that the legal title continued in Jacob Sherman, until those acts were done, and that the equitable interest alone vested in George Fridley, under the agreement, according to the true intent thereof. This legal title was devested out of Sherman, by his deed, executed under the recommendation of this court, containing a clause of general warranty ; and the judgment entered in the suit, immediately attached on the lands. Consequently, the lessor of the plaintiff, becoming the vendee of the sheriff, the legal and equitable interest in the premises, independently of all sales or contracts made by George Fridley, at any period subsequent to the execution of the original articles, became vested in him by operation of law. The result is that the testimony must be overruled.

The defendants' counsel afterwards offered the deposition of Richard M'Alister, esq., now deceased, taken on the 26th November 1790, previous to a hearing before the Board of Proper-

[Shultz's Lessee *v.* Hahn.]

ty, on a *caveat* entered by Jacob Sherman, against surveys made *on five warrants granted to George Ross and company, the witness having been cross examined by Sherman; but the same was overruled by the court, as a point which had frequently been decided by the court.

*299]

Verdict for the plaintiff.

Messrs. Duncan, Hopkins and Clark, *pro quer.*

Messrs. Bowie and Watts, *pro def.*

Cited in 3 Rawle 435 to shew that if the intention is clear that an estate shall pass, courts will construe deeds in support of that intention, different from the formal nature of those deeds.

Cited in 27 Pa. 301; 33 Pa. 249; 48 Pa. 385 to shew that the intention of the parties will control the technical words used.