## Mary Ringrose, Appellant, v. Joanna Ringrose.

[Marked to be reported.]

*Deed—Charge on land— Consideration — Support and maintenance of parents.*

A deed from a father and mother to a son creates a charge upon land which will follow the land into the hands of subsequent purchasers, whether at judicial or private sales where the deed contains the following recital: "The above described land and interest in the same conveyed to the party of the second part by his agreeing to support his father and mother, to do well and sufficiently maintain, support and keep his father and mother during their natural lives or the survivor of them with good and sufficient meat, drink, apparel, washing and lodging, use and occupancy of the dwelling where they now reside and medical attendance, in sickness and in health, and the funeral expenses of either of them, with the use of horses and carriages to take them to and from church at any time, and all times, and elsewhere at all times, as they may wish to go, and to furnish to each and either of them the sum of $25 per year during their natural lives."

The legal effect of the deed is affected by the interpretation of the parties to it, and as the words " the use and occupancy of the building" import the retention of possession for the purpose of receiving the " support and maintenance" provided for, an estate in the land is thereby reserved in the grantors, which affects the title of the grantee through all subsequent mutations.

In an action by the mother against the son's widow who had bought the land at an orphans' court sale, it is proper to admit in evidence a later deed between the same parties revoking certain money payments required to be made by the grantee to other relatives, but stipulating that the conveyance was " conditioned for the support and maintenance of the father and mother as fully, and to all intents and purposes as before; " the purpose of the evidence being to show the construction placed upon the first deed by the parties to it themselves.

Argued March 18, 1895. Appeal, No. 493, Jan. T., 1894, by plaintiff, from judgment of C. P. Bradford Co., Dec. T., 1890,

No. 166, on verdict for defendant. Before STERRETT, C. J.,
GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Ejectment for a tract of land in Windham and Warren town-
ships. Before PECK, P. J.

At the trial it appeared that by a deed dated March 28,
1874, Roger Ringrose and Mary his wife conveyed to their son,
Michael Ringrose, three pieces of land, one piece containing 100
acres, known as the homestead, another containing 50 acres and
another containing 52 acres. The consideration named in the
deed was $3,000, but no part of it was ever paid or intended to
be. In the deed and immediately following the description of
the lands is contained a recital as follows :

" The above described land and interest in the same conveyed
to the party of the second part by his agreeing to support his
father and mother, Roger Ringrose and Mary Ringrose his wife,
to do well and sufficiently maintain, support and keep the said
Roger and Mary Ringrose, his father and mother, during their
natural lives or the survivor of them, with good and sufficient
meat, drink, apparel, washing and lodging, use and occupancy
of the dwelling where they now reside and medical attendance,
in sickness and in health, and the funeral expenses of either of
them, with the use of horses and carriages to take them to and
from church at any time and all times, and elsewhere at all
times as they may wish to go, and to furnish to each and either
of them the sum of $25 per year during their natural lives,
and also to pay to Mary O'Neil $250 and to Bridget Ringrose
$250 at the death of the said Roger Ringrose and Mary Ring-
rose, his wife, and not before."

At the time the deed was made Michael Ringrose executed
to his father a bond in the sum of $3,000 conditioned inter alia
for the support of Roger and Mary Ringrose. Judgment was
entered on this bond to No. 250, May term, 1874, on March 30,
1874, but has never been revived. Mary O'Neil and Bridget
Ringrose were daughters of Roger and Mary Ringrose. By
another deed dated Feb. 8, 1881, between the same parties, the
same lands were conveyed, and after referring to the former
deed of March 8, 1874, it is recited as follows :

" The above recital and deed was given to the said Michael
Ringrose as above stated, on the 28th of March, 1874, and con-

tained among other things, a condition that said Michael Ring-rose should pay to Bridget Ringrose and Mary O'Neil, daughters of said Roger and Mary Ringrose, the sum of $250 each at the time of the death of said Roger and Mary Ringrose, said condition in said deed being intended as a gift to the said Bridget Ringrose and Mary O'Neil by the said Roger and Mary Ringrose and nothing more. . . . Now therefore, this deed is given for the purpose of revoking said gift, and annulling the condition in said conveyance for the payment of said several sums of money, aforesaid, and for no other purpose, whatever. Said conveyance and this conveyance being conditioned for the support and maintenance of the party of the first part as fully and to all intents and purposes as before."

Roger Ringrose died Jan. 11, 1883, his wife, Mary Ringrose, was living at the time of the trial and was about 88 years of age, and their son, Michael Ringrose, died in October, 1888, and left a widow, Joanna Ringrose. She acquired the title of her deceased husband in the said homestead farm at an orphans' court sale thereof in the year 1889.

Plaintiff offered in evidence deed dated February 8, 1881, from Roger Ringrose and Mary Ringrose, his wife, to Michael Ringrose, for the same lands described in the deed of March 28, 1874, between the same parties, acknowledged the 12th of February, 1881, before Mr. W. Baker, a justice of the peace, and not recorded; for the purpose of showing that Michael Ringrose took the lands in suit subject to the support and maintenance for life of Roger Ringrose and his wife, Mary, and the survivor of them, as well as subject to certain other conditions fully set forth in the deed of March 28, 1874, already given in evidence; also for the purpose of showing the construction which Roger Ringrose and Mary Ringrose, his wife, the grantors in the deed of March 28, 1874, and Michael Ringrose, the grantee, themselves put upon the deed of March 28, 1874.

The deed offered contained the following clause. "Said conveyance and this conveyance being conditioned for the support and maintenance of the party of the first part as fully and to all intents and purposes as before."

Defendant objected that the deed offered was not admissible to affect the grantee, because, first, it was absolutely void; being a deed poll it cannot in any way affect the grantee; it did not

piove or tend to prove either of the purposes for which it was offered; also that this deed was never delivered to the defendant to the knowledge of Joanna Ringrose, until after her purchase, and that she only knew of its ever being delivered by mere hearsay, and not from any knowledge of her own, and that the plaintiff has the deed in her possession.

Plaintiff then proposed to follow this deed with proof that it was duly delivered to the grantee, and that subsequently, after his death, it came into the possession of the defendant, his widow, and that his widow, the defendant, had knowledge of its contents.

Defendant made the further objection that the deed on its face expressed that it was given for the purpose of revoking the said gift, and annulling the condition as aforesaid for the payment of the said several sums of money aforesaid, and for no other purpose whatever.

Plaintiff also offered to prove that the widow, the defendant, appeared before the auditor appointed to distribute the funds in the hands of the administrators of Michael Ringrose, raised from the orphans' court sale of this real estate in suit as the property of Michael Ringrose, and offered this deed of February 8, 1881, in evidence before the auditor, for the purpose of preventing an allowance to Bridget Ringrose and Mary O'Neil of the $250 mentioned in deed of Roger Ringrose of March 28, 1874, to Michael Ringrose; and added to the purpose of their offer that the offer of this deed was also made for the purpose of aiding and assisting the court and jury in construing the deed of March 28, 1874, between the same parties.

Defendant objected also that it was irrelevant, immaterial and incompetent.

Defendant's objections to the deed offered were sustained; to which plaintiff excepted and a bill was sealed. [6]

When Mrs. Bridget Bolan, formerly Bridget Ringrose, was on the stand this question was asked her:

" Q. During the time you were there living with the defendant did you have a conversation with her in relation to your father having by subsequent deed revoked the gift or provision for the payment of $250 to you, contained in the deed made in 1874? "

Mr. D'A. Overton: " We object, first, that the question is leading, and, second, that it is immaterial and irrelevant.

The Court: " What is the materiality of it ? "

Mr. McPherson: " We offer to show by this witness that she had a conversation with the defendant within a few weeks after her brother's burial, and that the defendant informed her of the fact that her father, Roger Ringrose, made another deed to her husband, Michael, in which he revoked the provision in the former deed for the payment of $250 to this witness and to Mary O'Neil. That the defendant also stated to her in that conversation that her husband always intended, however, to pay her the $250. This is for the purpose of showing that the defendant had actual notice and knowledge of the deed heretofore offered in evidence, dated February 8, 1881, between Roger Ringrose and wife and Michael Ringrose. And this is to be followed with evidence that the defendant put that same deed in evidence before D. C. DeWitt, the auditor appointed to make distribution of the funds in the hands of the administrator of Michael Ringrose's estate. And to be followed by a new offer of the deed itself. The purpose of this offer is to show the defendant's knowledge of the contents of the deed, to aid in the construction of the former deed, and to be considered in connection with the way in which the real estate in suit was actually sold by the administrator."

Mr. D'A. Overton : " We renew our last objection."

Objection sustained, exception and bill sealed for plaintiff. [7]

Mr. McPherson: " We offer to show by this and other witnesses that the real estate in suit sold was worth at least $2,500, and that there were persons present at the sale who heard the notice given, and who were interested in the estate, and that they would have bid from $2,000 to $2,500 for the property at that sale, if it had not been for the notice given that it was being sold subject to the support for life of Mary Ringrose, the plaintiff."

Mr. D'A. Overton : " We object to the witness testifying to that ; that is immaterial and irrelevant as to what he would do or would have done."

Objection sustained, exception and bill sealed for plaintiff. [8]

Mr. McPherson : " We offer to show by Bridget Bolan that she was present at the sale, and that she bid on the property to the amount of $1,500, and that she would have bid largely in excess of that amount had it not been that it was announced

that it was being sold on condition that the old lady should have her support out of the farm."

Objected to as irrelevant and immaterial. Objection sustained, exception and bill sealed for plaintiff. [9]

Mr. McPherson : " We offer to show by Michael O'Neil that after the death of Michael Ringrose the defendant, his widow, made provisions with this witness to take the old lady, the plaintiff, to his home and maintain and support her, she, the defendant, agreeing to recompense him for so doing."

Mr. D'A. Overton : " We object, that it is immaterial, irrelevant and incompetent."

Objection sustained, exception and bill sealed for plaintiff. [10]

Plaintiff's points were as follows :

" 1. That the plaintiff by this action only seeks to enforce the provisions for her support, maintenance, etc., contained in the deed of March 28, 1874, and for that purpose she is entitled to recover in this action.  *Answer :* We refuse to affirm this proposition. [1]

" 2. That under all the evidence in this case the plaintiff is entitled to recover the land described in the writ to be released upon the payment by the defendant to the plaintiff of such sum as the jury shall find the plaintiff is entitled to for her support and maintenance from February 5, 1890, to the present time, and in addition thereto twenty-five dollars annually from February 5, 1890, within such reasonable time as the jury shall determine it should be paid.  *Answer :* We refuse to so charge. [2]

" 3. Should the court refuse to charge as asked in the second point, then the plaintiff is entitled to recover the dwelling house upon the premises described in the writ, to be released upon the payment by the defendant to the plaintiff of such sum as the plaintiff is entitled to for her support and maintenance from February 5, 1890, to the present time, and in addition thereto $25.00 annually from said February 25, 1890, within such reasonable time as the jury may determine it shall be paid. *Answer :* We refuse to so charge you. In our view of this con tract, that would be recoverable in damages, and not by eject ment. [3]

" 4. That if the jury find from the evidence that the defend-

ant was present at the orphans' court sale of the lands in suit and heard the administrator give notice that the lands would be sold subject to the support of the plaintiff, and that the defendant acquiesced in the sale being so made, and purchased the lands for less than she otherwise could have done, then she took the lands subject to the support of the plaintiff and the plaintiff is entitled to recover. *Answer :* We refuse that, for the reasons given in our general charge, and we direct you to render a verdict in favor of the defendant." [4]

The court directed a verdict for defendant. [5]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–5) above instructions, quoting them; (6–10) rulings on evidence, quoting the bill of exceptions.

*I. McPherson, E. J. Angle, E. Overton* and *N. C. Elsbree* with him, for appellant.—In construing an instrument of this kind, the whole instrument, the relation of the parties, and the nature and object of the transaction, must all be considered, and the strongest words of conveyance in the present tense will not be held to pass the fee, if the intention appears to be otherwise : Dreisbach v. Serfass, 126 Pa. 32 ; Williams v. Bentley, 27 Pa. 294 ; Ogden v. Brown, 33 Pa. 247 ; Shirley v. Shirley, 59 Pa. 267 ; Rohn v. Odenwelder, 162 Pa. 346.

A grantor, by a deed of conveyance, may create liens upon the land conveyed for purchase money, or for the performance of collateral conditions or stipulations which are binding between the parties to the deed or their privies, and may be enforced by equitable ejectment against any one in possession, claiming title through such deed : Strauss's App., 49 Pa. 353 ; Eichelberger v. Gitt, 104 Pa. 64.

Ejectment in this state is an equitable action, and when brought to enforce an executory agreement to convey is a substitute for a bill in equity : Russell v. Baughman, 94 Pa. 400.

A clause in a deed to the effect that the land is conveyed subject to the payment of purchase money, imposes a lien on the land conveyed which may be enforced by equitable ejectment : Kensinger v. Smith, 94 Pa. 384 ; Schnyder v. Orr, 149 Pa. 320.

Liens or charges on land created by deed are not divested

by judicial sales when they are in the nature of testamentary provisions for wives or children or are incapable of valuation or are expressly created to run with the land : Strauss's App., 49 Pa. 353.

A formal receipt for the purchase money contained in a deed which creates a lien for the payment of the purchase money is not prima facie evidence that such lien is satisfied : Eichelberger v. Gitt, 104 Pa. 64.

The parties and the subject-matter being the same in this action as in the adjudication in the orphans' court the principle of res adjudicata applies : Wetherald v. Van Stavoren, 125 Pa. 535; Myers v. Kingston Coal Co., 126 Pa. 582; Woods v. White, 97 Pa. 222.

When parties to a contract, either parol or written, agree upon its meaning, or what construction shall be given to it, they are bound by it.

The defendant is estopped from denying that she acquired title subject to the incumbrance : Crooks v. Douglas, 56 Pa. 51; Ashmead v. McCarther, 67 Pa. 326; Tospon v. Sipe, 116 Pa. 588.

*D' A. Overton, J. C. Ingham* with him, for appellee.—A condition stipulated in a deed of conveyance may be enforced by ejectment, but a consideration even amounting to a covenant on the part of the vendee cannot : Cook v. Trimble, 9 Watts, 15.

Ejectment will not lie to enforce the performance of a contract which is the consideration of a deed of conveyance : Krebs v. Stroub, 116 Pa. 405.

A judgment of a court of concurrent jurisdiction is not evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment : Duchess of Kingston's Case, 20 How. St. T. 578; Hibshman v. Dulleban, 4 Watts, 183; Martin v. Gernandt, 19 Pa. 124; Finley v. Hanbest, 30 Pa. 190.

A judgment concludes no one as to matters not necessary to decide : Forcey's App., 106 Pa. 515.

Estoppels must be mutual : Mehaffy v. Dobbs, 9 Watts, 363.

A recital in a deed poll is not evidence against the grantee : Poyntell v. Spencer, 6 Pa. 254; Sparrow v. Kingman, 1 Cow

(N. Y.) 345 ; Longwell v. Bentley, 3 Grant, 177 ; Naglee v. Ingersoll, 7 Pa. 185.

OPINION BY MR. JUSTICE GREEN, October 7, 1895 :

The deed from Roger Ringrose and his wife, the present plaintiff, to Michael Ringrose, dated March 28, 1874, was for three tracts of land, one of which, known as the homestead farm, containing 100 acres is the subject of the present action of ejectment. A nominal consideration of $3,000 which was never paid, or intended to be paid, was recited in the deed, but in the body of the deed, and immediately following the description of the lands, appears the following recital, " The above described land and interest in the same, conveyed to the party of the second part by his agreeing to support his father and mother, Roger Ringrose and Mary Ringrose his wife, to do well and sufficiently maintain, support and keep the said Roger and Mary Ringrose, his father and mother, during their natural lives or the survivor of them with good and sufficient meat, drink, apparel, washing and lodging, use and occupancy of the dwelling where they now reside, and medical attendance in sickness and in health, and the funeral expenses of either of them, with the use of horses and carriages to take them to and from church at any time, and all times, and elsewhere at all times, as they may wish to go, and to furnish to each and either of them the sum of $25 per year during their natural lives, and also to pay to Mary O'Neil $250, and to Bridget Ringrose $250, at the death of the said Roger Ringrose and Mary Ringrose his wife, and not before."

It is apparent at once, that the true and only consideration of the conveyance was the performance by Michael Ringrose of the stipulations expressed in the foregoing recital. The expression of the obligation of the grantee is peculiar but perfectly clear. " The above described land and interest in the same conveyed to the party of the second part by his agreeing to support his father and mother," etc. That is, the land is conveyed, because of, or in consideration of, the agreement of the grantee to do the several things next expressed. Of course the performance is to take place in the future. The question arising in this case is whether the provision in favor of the grantors is a charge upon the land which will follow it into the hands of

subsequent purchasers, whether at judicial or private sales. Being embodied in the deed it is notice to all purchasers claiming by subsequent conveyances. If the agreement for support and maintenance was a mere personal covenant of the grantee, unaccompanied by any provision for the permanent occupancy by the grantors of any part of the land conveyed, it would not be a charge upon the land. This was the case in Krebs v. Stroub, 116 Pa. 405, where the contract, while it contemplated the event of a residence on the land at the mere will of the grantors, made no provision for it, conferred no such right upon the grantors, and was not reserved by them expressly or otherwise. The deed was absolute to the grantee who executed a bond independently of the deed, the condition of which alone expressed the things he was to do.

But in this case the deed itself provides in favor of the grantors for the " lodging, use and occupancy of the dwelling where they now reside," and it was to continue during their natural lives. As all the services which were to be rendered to the grantors, were personal to them, they were necessarily to be rendered to them as occupants of the house on the homestead where they, then, and for many years before, had resided. In the case of Rohn v. Odenwelder, 162 Pa. 346, where a similar provision was contained in the deed, we held that it created a charge on the land as to all the provisions. We said, " Immediately after the provision for the widow is a direction that both husband and wife, grantors in the deed, shall have the right and privilege to occupy three rooms of the house during their joint lives and the life of the survivor. As this is a palpable charge upon the title, into whosesoever hands it might fall, it is entirely consistent with the idea that the grantors intended to have the security of the land for all the reservations in the deed in their favor." It is true that the words of the grant in that case contained at the beginning the expression, " under and subject nevertheless to the payment of the sum " etc., and those words were held to create a charge on the land although they were annexed simply to a direction to pay money. But the provision for the occupancy of part of the house also created such a charge, and it carried with it all the provisions in favor of the grantors.

In the case of Wusthoff v. Dracourt, 3 Watts, 240, we held that a devise of a house to one (Henrietta Miller) for life, with

remainder in fee to her children, "Reserving however two of the rooms of said house for the use and during the life of the widow, Mary Wusthoff, mother of said Henrietta Miller, and wife of Julian Dracourt. I desire by this fourth article that the widow Wusthoff may have the choice of those two rooms which shall the best suit her; because I desire that the said widow, Mary Wusthoff, should be sure of a shelter, home, during the time she may have to live," created an estate for life in the widow Wusthoff in the two rooms, of which she might make any disposition, and that it did not create a mere easement for her personal use. The widow Wusthoff selected the two most valuable rooms in the house and, instead of occupying them herself, leased them to a stranger for a money rent, which she received and retained for her own use. We held that she was at liberty to do this although her daughter, the devisee of the whole house for life, was obliged to pay the taxes and ground rent, because the widow's interest was an estate for life in the two rooms.

In the present case it is not necessary to go so far. Here the right to lodge, and the use and occupancy of the whole house, was preserved to the grantor and his wife during their joint lives and the life of the survivor. As a matter of course this right could not be enjoyed without having and exercising possession of the house, and the interest of the grantors in the house was beyond all question a life estate in both. Said Rogers, J., in Wusthoff v. Dracourt, "The devise of the use of a thing is a devise of the thing itself."

In the case of Bear v. Whisler, 7 Watts, 144, the grantor, Philip Hartman, made an agreement with Jacob Angney by which he sold and conveyed to Angney a certain tract of land containing 125 acres, "for and in consideration of the said Jacob Angney, his heirs, executors, administrators or assigns, or either of them faithfully discharging the following covenants and agreements, to wit: the said Jacob Angney, shall pay six certain obligations of $80 each," and further that "said Jacob Angney shall and will grant and provide for said Philip Hartman and Elizabeth his wife, during their natural lives, the privilege to occupy that part of the dwelling house which they now live in, and provide " them, with flour, fire wood, a cow, hay and pasture, two pigs, etc. An ordinary deed in fee simple

was afterwards made conveying the title to Angney with a recital at the end of the attesting clause that it was made subject to the conditions and obligations of the agreement. The grantee not having performed all the terms of the agreement, and the land being sold away from him at a sheriff's sale, an action of ejectment was brought by the heirs of Hartman the grantor against an alienee of the purchaser at sheriff's sale, to enforce the payment of the money obligations mentioned in the agreement. We held that the terms of the agreement could be enforced as by the grant of an estate upon condition, and upon that subject we said, ROGERS, J., " Whether this was an estate on condition depends on the intention of the parties indicated by the agreement and the deed, which must be taken as one instrument. The principal object of the contracting parties was to provide a comfortable provision for the grantor and his family. If the intention is clear, and is expressed by apt words, why should the vendor be restrained to the remedy by the action of covenant ? If the vendee had altogether failed in the performance of his agreement as to the vendor, would it have been an adequate remedy to the vendor to give him an action of covenant ? It is manifest it would not. Would he not have been entitled to recover the possession of the premises, in such a case, by action of ejectment ? But if the vendor would himself have been entitled to this remedy, I cannot perceive why the present plaintiffs are debarred from it, particularly as the object is merely, in this form of action, to enforce the performance of the agreement in good faith. The provisions of the deed equally apply to the recipients of the money as to the vendor himself. But furthermore it is apparent from the face of the deed, that something remains yet to be done by the vendee before his title is perfect ; and that so far he may be viewed in the light of a trustee in equity for the vendor notwithstanding the legal title has been conveyed. Of this the purchaser at the sheriff's sale had notice, because it is spread upon the face of the title under which he claims. We must look to the substance of the agreement and not to the form. . . . . So a purchaser at sheriff's sale takes the land subject to the payment of purchase money which appears on the face of the deed to remain unpaid, and of which he has notice."

The whole of this reasoning is directly applicable to the facts

of the present case.  In Bear v. Whistler the conveyance was absolutely without any condition on its face.  But by a brief reference to the agreement subject to which the conveyance was made, all the stipulations of the agreement were imported into the deed with the same effect as if they had been written in the deed.  The word "subject" merely gave notice of the conditions and obligations of the agreement, but the agreement itself did not contain that word, or any other equivalent word, or expression, operating as a condition, or restraint, upon the effective words of the conveyance, except as such a consequence was derived from the terms of the agreement itself.  Hence the whole force of the reasoning of the opinion of this court was based upon the inquiry, What was the intention of the parties? In the present case the words of the agreement of the parties are incorporated into the deed and are a part of it, and they need no words of reference or condition in another instrument to bring them within the operation of the deed.  Being in the deed in this case, they have the same operative effect, as was given to them in Bear v. Whistler, after they were brought into the deed by the subjecting and conditional reference in the deed.  The question then being what was the intention of the parties as to the estate being upon condition, the solution is perfectly simple.  The deed expressly declares that the lands are conveyed to the grantee, "by his agreeing to support his father and mother," etc.  That is because he agrees to support them, for that reason, and upon that consideration, they have made the conveyance.  The cause and reason of the conveyance are more effectively and directly expressed in these words, than by the words "under and subject," or "upon condition."  For the obligatory words immediately follow the words of conveyance and description, and the connecting words "by his agreeing to support his father and mother."  In other words A conveys land to B.  B thereby agrees to support the grantor, and B takes his title clogged with this expression of the purpose of the conveyance to him.  It is conceded that if the deed had contained the words "subject to the support" etc., or "on condition of the support" etc., those words would have created a condition which would have fastened on the title.  Why?  Manifestly because such was the intention of the parties.  But such intention is not specifically declared by such words.  It is inferred because the

purpose of support is implied from the words "subject to," or "on condition of" support. But that purpose is more directly expressed when the deed declares that, "The above described land and interest in the same conveyed to the party of the second part by his agreeing to support his father and mother." It is true more words are used, but they are more expressive of the very purpose and intent of the conveyance.

There are however other reasons quite as forcible as the above, establishing the same intent. The "use and occupancy of the building where they now reside," necessarily imports the retention of the possession of part of the premises granted, for the purpose of receiving the support and maintenance provided for, and these words, as we have seen, create an estate in the land which belongs to the grantors. If it belongs to the grantors it never passed to the grantee, and hence affects his title through all its subsequent movements. The other stipulations are also such as to indicate clearly that they were to be performed on the land. Thus the grantors are to be supplied, while occupying a house on the land, with, "good and sufficient meat, drink, apparel, washing and lodging," also, "medical attendance in sickness and in health, and the funeral expenses of either of them, with the use of horses and carriages to take them to and from church at any time, and all times, and elsewhere at all times as they may wish to go." It is simply incredible that it ever entered into the minds of either of the parties, that such services as these were to be rendered at any other place than on the land itself. At any other place they would be an intolerable and costly burden which would practically destroy the value of the grant.

In the case of Ogden v. Brown, 33 Pa. 247, the words of the instrument were a present grant of title to the grantee, "in the consideration that the said Stephen Wilcox deliver unto me the said Amy Cranmer, one third of all the produce of all kinds whatsoever; grain to be delivered in the half bushel and hay in the barn during my natural life; then the said Stephen to have free and peaceable possession clear of all encumbrances except the lord of the soil." We held this to be an executory contract, under which the fee passed to Stephen Wilcox on the death of his mother, although there were no words of inheritance in the deed, simply because such was the intention of the

parties.   In the opinion by STRONG, J., he said, " The purpose
of the instrument was so evidently to make provision for Mrs.
Cranmer, while she should live, that it can hardly be presumed
her intention was to part with her interest irrevocably, without
effectuating her purpose."

We cite the case as an illustrative instance in which the legal
effect of the instrument was made to depend upon an interpre-
tation of the intent of the parties, and that intent was chiefly
worked out by the consideration that the grantor meant to have
support during her life as a result of the grant.   We think the
same line of reasoning affects the interpretation of the instru-
ment we are considering.   It is entirely conclusive that Roger
and Mary Ringrose intended to have their support from their
son Michael during the whole of the remainder of their lives, as
a result, and as the reason for their conveyance of the title.
The consideration could never be paid until the death of both
of them, and an actual residence on the land during the entire
period was specifically provided as a part of the consideration
of the conveyance.

In construing a similar instrument in Shirley v. Shirley, 59
Pa. 267, THOMPSON, C. J., said, " Courts in my opinion, should
be slow to give the effect of absolute conveyances to instru-
ments for provisions made between parents and children, of
the kind of which we are speaking, unless the intention be very
clear.   Such agreements are usually fruitful sources of strife,
litigation, and very often of great wrong to aged and feeble
parents ; and when held to be absolute conveyances, it puts
them entirely at the mercy, sometimes of unwilling, and often
unkind offspring."   There could be no more forcible or pointed
illustration, than is afforded by the facts of the present case, of
the justice and humanity of the foregoing comments.   The
venerable plaintiff is now almost 90 years of age, entirely help-
less to earn any present support, and dependent upon the pro-
vision in her deed to her son for the very means of existence.
Her son is dead, her husband died before him, and she is left
alone to maintain a struggle for her life with her own daughter-
in-law who has obtained the title to the land through proceed-
ings in the orphans' court.   It is matter of much satisfaction
that we are not obliged to hold that the conveyance by which
she granted the land in question to her son, was an absolute

deed free of all conditions or restraints, and that we are at liberty to decide, as we do, that the land and its owners must perform the service, and render the tribute, because and on account of which, the plaintiff, still maintaining by a legally reserved right, an actual residence on the land, was induced to, and did, part with all the rest of her title. The condition upon which she granted the title has not yet been fully performed, and cannot be until her death, and until it has been fully performed the title of the grantee and his successors has not become complete.

The case of Dreisbach v. Serfass, 126 Pa. 32, affords another instance in which the foregoing considerations were applied and enforced in the construction of an instrument quite similar to the present. There the grantor, over 70 years of age, and childless, conveyed by a deed the fee simple title to a tract of fifty acres of land to his niece, who was a married woman. The consideration recited in the deed was one dollar and " other good and valid considerations in law hereinafter mentioned, and to be strictly kept by the said Sally Ann Serfass." These considerations appeared in a clause following the description of the land thus, " excepting, nevertheless the residence of the said Peter Berger, the grantor hereof, of the first part, in the house and on the premises during his natural life until the death and burial of the said Peter Berger, and I, the said Sally Ann Serfass, the grantee in the aforesaid premises, do hereby bind myself, my heirs &c. to find good house room and sleeping and lodging apartments for the convenience of the said Peter Berger during his life, and to find good and sufficient board, lodging, meat, drink, clothing and nursing, medical attendance and all other necessaries for him during his life and a decent burial for him &c. all of which is to be and remain a lien upon the premises aforesaid, until the whole of the duties aforesaid are performed " etc. Sally Ann Serfass and her husband entered upon the premises and performed the services until she died. Then her husband engaged one Dreisbach to go into possession and take care of the grantor, Berger, until his death, and surrendered the possession to Dreisbach. Afterwards Berger made an absolute deed for the premises to Dreisbach for five dollars and, later, died. After his death Dreisbach refused to surrender the possession to Serfass, who thereupon

brought ejectment to recover the land. We held that the deed to Sally Ann Serfass was not in the nature of a will, nor yet an absolute deed, but merely an executory contract vesting an equitable estate in the grantee, the legal title remaining in the grantor during his lifetime. We held also that there could be no recovery in ejectment by the heirs of the original grantee in the absence of evidence that the covenants in the deed on the part of the grantee had been performed by the grantee or her · representatives. There was no reservation of any part of the premises, but the right of residence in the house and on the land was excepted, and it was also declared that the grantor's right to the services of the grantee should be a lien on the land. The determination of the case was not upon the fact of the exception as to residence, nor upon the language declaring the grantor's rights under the deed to be a lien, but upon the intention and meaning of the parties. Thus our brother WILLIAMS, delivering the opinion, said, " We have seen that the object of the transaction was to secure the continued performance of such services as his age and condition might render necessary. It is important to remember also that this was an arrangement between near relatives, and that the services of the niece are stated to be the consideration which she pays and is to pay for the property of her uncle. He is to have the right to live in the house, to remain in possession, and she is also to take possession, and live in the same house, in order to fulfill her agreement. . . . It is equally clear that the exceptions and covenants were intended to protect the grantor against the words importing a present grant. That such words do not necessarily pass a present fee has been repeatedly held. The whole instrument and the nature and object of the transaction must be considered. In Williams v. Bentley, 27 Pa. 294, it was held that the strongest words of conveyance in the present tense will not pass an estate if from other parts of the instrument the intention appears to be otherwise. . . . The right of Serfass to recover possession in this action depended upon whether the consideration agreed upon had been paid. . . . It would be contrary to the original intentions of the parties, as well as against good conscience to permit the vendee to recover the possession of the land from his vendor, or one holding his

title, without rendering, or offering to render, the equivalent contracted for."

Every word of these comments is directly applicable to this case. That it was the intention of these parties that the services were to be rendered in consideration of the conveyance is too plain for argument. That it would be a gross injustice to permit the grantee, or one claiming under him, to retain the land without performing the service is equally clear. And no matter how strong the words of present grant in the deed are, if the intention was that the title should not pass entirely except upon the complete performance of the service stipulated for in the deed, then it does not pass. Such are all these authorities and by them this case is governed. We are clearly of opinion that the plaintiff was entitled to an unqualified affirmance of her first, second and third points, and we therefore sustain the first three assignments of error. We sustain the fifth assignment; and think the instruction should have been to find for the plaintiff. We think if Michael Ringrose accepted the deed of February 8, 1881, it was evidence to show the construction given to the deed of March 28, 1874, by all the parties, and should therefore have been received in evidence, and we therefore sustain the sixth assignment. For the purpose of showing the knowledge of the second deed by the defendant we think that deed should have been received in evidence with the other facts offered under the seventh assignment, and we therefore sustain that assignment. For a similar reason we sustain the tenth assignment. We do not sustain the fourth, eighth and ninth assignments.

Judgment reversed and new venire awarded.