Rebecca Bonebrake *v.* Benjamin R. Summers, Levi C. Row, Christian Avery Miley and Samuel S. Hess, Appellants.

*Equity jurisdiction—Inadequate legal remedy.*

Equity will assume jurisdiction where the legal remedy, although undoubtedly available, was utterly inadequate, not only for the purpose of securing the plaintiff's rights but of apportioning the burdens thereby imposed upon the defendants among themselves.

*Real estate—Sale thereof—Maintenance of grantor does not impose him as a fixture.*

In a deed reserving maintenance of the grantor as a consideration for the conveyance of land, the grantor is not imposed as a fixture to be passed by delivery with the sale of the land.

*Assignee's sale—Liens—Discharge of—Covenants running with land.*

An assignee's sale of land bound by a covenant running with the land, made by the assignor with his vendors looking to their support for life, is not released or discharged by such sale, which was of the assignor's title merely, inasmuch as parties may, by clear and express words in deeds of conveyance, create liens upon land, either for purchase money or for the performance of collateral conditions which will be binding between themselves and their privies, and such liens will not be divested by subsequent judicial sales where they are in the nature of testamentary provisions for wives and children, or are incapable of valuation, or are expressly created to run with the land.

Argued March 22, 1898.    Appeal, No. 16, March T., 1898, by defendants, from decree of C. P. Franklin Co., Equity Docket, vol. 2, page 263, directing payment of a sum of money in accordance with the prayer of the petitioner.    Before Rice, P. J., Wickham, Beaver, Reeder, Orlady, Smith and Porter, JJ.    Affirmed.

Bill, answer and proofs.    Before Stewart, P. J.

The facts sufficiently appear from the following opinion of the court below, by Stewart, P. J.:

### FINDINGS OF FACT.

1. Daniel Bonebrake and Rebecca, his wife, by deed dated August 30, 1890, conveyed to Abraham L. Smith a tract of

land situate in Quincy township, containing eighty-eight acres and seventy-four perches. The consideration expressed in the deed is $3,000. In the habendum occurs this clause : " Nevertheless the maintenance of Daniel Bonebrake and Rebecca his wife, during their natural life, is a part of the consideration herein mentioned, therefore this title does not become clear of all incumbrance until at the death of the said Daniel Bonebrake and Rebecca his wife."

2. At the time of this conveyance there were several liens of record against the property—two judgments each of $500, which Smith personally assumed; a mortgage for $1,300 in favor of Levi C. Row, one of the defendants, and a judgment in favor of Rebecca Bonebrake, the plaintiff, for $3,000. Subsequently, and during the ownership of Smith, other liens were acquired.

3. On March 23, 1895, Smith, the grantee, made a general assignment of all his property, including the land conveyed to him by Bonebrake, in trust for the benefit of his creditors. Pursuant to an order of the court of common pleas his assignee sold said tract of land, fifty-nine acres and thirty-six perches, to Benjamin R. Summers and Levi C. Row for $2,339.38, seventeen acres and twenty-two perches to Christian Avery Miley for $119.96, and twelve acres and sixteen perches to Samuel S. Hess for $133.10, which sales were duly confirmed January 28, 1896, and deeds were made, executed and delivered by the assignee to the several purchasers respectively. In each of these deeds it is expressly stated that the property is conveyed subject to the rights of Rebecca Bonebrake therein, under the deed from Bonebrake and wife to Smith.

4. At the sale of the land by the assignee of Smith it was publicly announced that the land would be sold subject to the charge contained in the deed from Bonebrake and wife to Smith, and so much of the deed as referred to the charge was publicly read; but it does not appear affirmatively that this was in the hearing of any of the defendants. I cannot find as a fact from the evidence that before the sale was actually made, any of the defendants had knowledge of the existence of the charge in the deed.

5. On March 23, 1895, when Smith assigned for the benefit of creditors, the amount of the several liens which were in ex-

istence when he acquired the property from Bonebrake remaining unpaid was $1,415, with interest from April 1, 1894, and costs. The judgment for $3,000, in favor of Rebecca Bonebrake, had been marked satisfied and paid on the record by Mrs. Bonebrake March 2, 1892.

6. Daniel Bonebrake and wife resided with Smith, their grantee, upon the farm they conveyed to him, and were supported and maintained by him. Bonebrake died in the fall of 1892. His widow, Rebecca, remained with Smith, as a member of his family until March, 1895, when Smith having assigned for the benefit of his creditors, left the farm and moved to the state of Maryland. Thereafter she continued on the farm, residing with the tenant of the assignees, until in February, 1896, when she went to Maryland to reside again with Smith. She has remained in his family until the present, under a contract to pay to Smith $10.00 a month for her boarding and an allowance for house rent, if she became able.

Mrs. Bonebrake has no estate of any kind apart from her interest under this deed of conveyance to Smith; she is seventy-six years old. Mrs. Smith, wife of A. L. Smith, the grantee, is her grandchild, and nearest living relative. A. L. Smith, the grantee, has no estate.

7. Rebecca Bonebrake, widow of Daniel Bonebrake, presents this her bill asking that the several purchasers of the land from Smith's assignee—the defendants herein—be required by a decree of this court to provide and furnish for her out of the land so conveyed them, a suitable maintenance, alleging that such maintenance was made a fixed charge and lien upon the land by the terms of the conveyance to Smith, which was not discharged by the assignee's sale, but still subsists and is enforceable against the land conveyed.

8. The answer of the defendants raises no question of fact, but denies their liability to the plaintiff, on the ground (1) that the clause in the deed from Bonebrake and wife to Smith, which the plaintiff insists is a charge upon the land, "does not create any charge or lien upon the lands described in and conveyed by said deed, but at most creates a personal charge or debt against the grantee named therein;" (2) "that the title which passed by said (assignee's) sale to the purchasers, is clear of any lien or incumbrance supposed to have been created thereupon by the deed to Abraham L. Smith."

The answer further denies the jurisdiction of equity in the premises.

## CONCLUSIONS OF LAW.

The questions raised with respect to the nature of the charge in the deed and its effect are to be first disposed of. Neither presents any considerable difficulty.

1. That it was the intention of the parties to the conveyance to charge upon the premises conveyed, a maintenance for the grantors as a continuing lien, is manifest from the language used. What the law requires to create a charge in the title is not any particular formula, but words which clearly indicate such purpose. It is the intention that governs, and where this is clearly expressed the law recognizes and enforces it. There can be no charge in the title arising from legal implication; but where the parties by their own agreement expressed in unmistakable language in the deed of conveyance subject the property conveyed to an incumbrance, its lien is as valid as any other. "The sum of the authorities is," says WOODWARD C. J., in Hiester v. Green, 48 Pa. 96, "that though equitable liens are not favored by our law, yet parties may by clear and express words in deeds of conveyance create liens upon land, either for purchase money or for performance of collateral conditions." Referring to the case just cited, AGNEW, J., in Strauss's Appeal, 49 Pa. 353, says: "Hiester v. Green brought us back to the rule that all charges upon real estate must appear affirmatively, and in such form as to admit of no doubt of the intent to charge, and therefore of easy determination by those who examined the title. It must be conceded that a rule which is dependent upon mere inference or construction affords no safe guide. Hence Hiester v. Green intended to say, and did expressly rule, that the lien of purchase money is not to be left to mere equity, or to an implication arising in merely equitable consideration, but must appear in an express form, when an intent to charge is apparent because it is so expressed. This affords a safe and easy guide to purchasers who look into the title, and if they do not find this expressed intent, are at once relieved from a mere consideration of equity, and a balancing of results accompanied by more or less difficulty in determining their true effect." Whatever else may be obscure about the deed of conveyance from Bonebrake and his wife to

Smith, the language used in the habendum leaves no doubt whatever that the maintenance of the grantors during their natural lives was part of the consideration therefor. This without more would be insufficient, but it is immediately followed by the explicit and unequivocal statement that "therefore, this title does not become clear of all incumbrance until at the death of said Daniel Bonebrake and Rebecca his wife." Language such as this excludes all doubt as to the intention of the parties; it leaves nothing to the balancing of results, but notifies in a most direct and positive way, everyone inquiring of the deed, that by the act of the parties the land conveyed is made subject to this charge.

2. It is equally clear, we think, that this charge survived the sale by the assignee, and still remains a lien upon the land in the hands of its present owners. This results from its indeterminate character. The indefiniteness of its valuation, and the uncertainty of its duration, exempt it from the general rule which discharges land sold at judicial sale from existing liens. In Luce v. Snively, 4 Watts, 396, it is said: "By a series of decisions on the subject, a general rule has been laid down and established, that the party purchasing at a judicial sale fairly made, shall take and hold the land so sold, not only free from all existing liens for and on account of the debts of the person as whose estate it is sold, but free likewise from all liens for and on account of the debts of the previous owners of the land through or by and from whom he derived the legal title for it. To this general rule, however, there are some exceptions. Prior mortgages are made so by act of assembly. So where the nature of the prior lien consists of annual payments to be made for an uncertain length of time, and therefore such as render the cash amount or value thereof incapable of being ascertained on account of the uncertainty of its duration, it must be considered an exception, as for instance when the land is charged with the annual payment of money or other thing, for the support and maintenance of one or more persons during life, or with the annual payment of the interest upon one third of the valuation money of the land coming to the widow in certain cases of intestacy," etc. The same rule is expressed in Dewalt's Appeal, 20 Pa. 236, but in a different way. In the last mentioned case it is said: "True the law does seek to discharge all liens as far

as possible by judicial sales, but it cannot do so in all cases. And it will in no case do so where the charge stands in the title, and can be discharged only by the court undertaking to administer the fund by investing it, in order to fulfil the purposes of the charge." The most recent affirmance of this rule, with respect to the point now under consideration, will be found in Rohn v. Odenwelder, 162 Pa. 346.

3. It was earnestly contended however upon the argument, that this rule is not applicable to sales made by assignees under an order of court, since the act of February 17, 1876, authorizing them, provides in sec. 1, that such sales "after being confirmed by the court shall discharge all liens against the real estate so sold, excepting that where the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents and purchase money due the commonwealth, the lien of such mortgages shall not be destroyed, or in any wise affected, by any sale made by virtue or authority of any order of sale made under the provisions of this act." It is insisted that this act distinguishes sales made under its provisions, from all other judicial sales in this respect; and that no liens can survive an assignee's sale other than those which are expressly excepted by its terms. The general language of the act would certainly admit of this interpretation; but upon closer examination it is apparent, we think, that no such distinction is intended. Certainly the purpose of the act, and the only purpose for that matter, was to make these sales judicial so that liens might be divested; but it still remains true, that there are cases in which this result cannot be reached. But for the exception of first mortgages expressed in the act, they would, under the general language used, be divested, because it is practicable to divest them, however inexpedient and unwise it may be to do so; but with respect to such liens as are fixed in the title, and are in their nature incapable of present determinate valuation, there is a practical difficulty in the way of divestiture, which negatives the idea that they were in contemplation when it was provided that such sales should " discharge all liens against the real estate so sold."

The divestiture of liens by judicial sales results not from statutory enactment, but from a series of decisions on the sub-

ject, as was said in Luce v. Snively, supra. In order to save first mortgages from the operation of the general rule established by these decisions, the act of April 6, 1830, was passed; and we find that the exception in the act of 1876 is in the very language of this earlier act relating to mortgages, indicating a purpose to place assignees' sales upon a footing with sheriffs' sales, giving them no wider, but the same, effect upon liens. This view is strengthened by the fact that there is no apparent or discoverable reason why the one kind of judicial sale should be distinguished from the other in this particular.

Our conclusion is that no such distinction was intended, and it results from what we have said, that we have here a fixed lien in the title for the plaintiff's maintenance, which was not divested by the assignee's sale, and that it continues a charge upon the land in the hands of the present owners, the defendants.

4. Nor can the objection to the forum in which the plaintiff seeks her remedy be sustained. Ordinarily the action of assumpsit affords an adequate remedy against a subsequent vendee of land to recover a fixed charge thereon, like an annuity: Rohn v. Odenwelder, 162 Pa. 346. But this case presents features which call for a remedy more embracing and complete. Here are several parcels of lands, owned by as many different persons, each parcel subject to the same common charge, and each answerable of itself in an action of assumpsit to a demand for the whole charge. The several owners could not be joined in one action, and no more could one action cover all the parcels, and subject each to a ratable proportion of the whole. In equity alone can a full and adequate remedy be found. "Jurisdiction in equity depends not so much on the want of a common law remedy, as upon its inadequacy, and its exercise is a matter which often rests in the discretion of the court; in other words the court may take upon itself to say whether the common law remedy is under all the circumstances of the case and in view of the conduct of the parties, sufficient for the purpose of complete justice, or whether the intervention of chancery may not for that purpose be required and beneficially applied:" Bispham's Equity, sec. 484, quoted approvingly in Bierbower's Appeal, 107 Pa. 14. It is apparent, from the nature of the present case, that the intervention of chancery is required to settle, determine and adjust the rights and obligations of the several parties thereto.

5. It remains to consider the extent of the plaintiff's rights with respect to the maintenance that is charged in the deeds. Maintenance is what she is entitled to; but the provision in the deed under consideration does not define it, or afford any standard by which it can be measured. Maintenance means support; and under any circumstances, used as it is here, would be held to include proper provision for bodily wants and necessities, shelter, food, raiment and such other things as may be required for physical health and existence. It may include much more, but it cannot mean less. Our endeavor must be to discover what the word meant to the parties using it; for after all it is the intent as we find it that is to be enforced. In Steele's Appeal, 47 Pa. 437, the charge was "a sufficient maintenance" for the wife. That it was a testamentary charge and not a charge in a deed is without significance for the same rules of interpretation apply. It was there said: "It seems very clear that the primary object of the testator, in this case, in that portion of his will making provision for his widow after his decease, was to secure for her a comfortable maintenance for life, and that the manner of doing so was to be entirely subordinate thereto. This primary intent is clearly disclosed, and its accomplishment charged upon all his realty, but not a word is said as to the mode and manner of its administration. We have nothing therefore to do, in interpreting the provision under consideration, if interpretation be indeed needed in such a case, but to give full efficiency to the clearly disclosed primary intent, and that is, in the absence of all restriction, to allow the widow the fruits of the testator's bounty wherever she may choose to reside. Of course her discretion must in this particular be reasonably exercised both as to place and material and quantum. A comfortable maintenance, measured by the station, habits and tastes of the testator and the widow it is fair to presume was intended, no more nor no less, without extravagance either as to place nor material."

So here, the primary intent is clearly enough disclosed, and we can have no other standard by which to measure the extent of the maintenance that was contemplated other than the habits, tastes and station of the parties. The evidence shows that they were simple, plain people, living frugally, with few

wants and these easily and cheaply supplied. This plaintiff is now seventy-five years old, with the usual infirmities that wait upon extreme age. The living she at present has is in accordance with her desires, and the fact that she has contracted for it at the rate of $10.00 per month, with an additional allowance for house rent, shows that she is not extravagant in these. There are ordinary and incidental expenses which should be considered outside of the mere living; allowance must be made for clothing, for fuel and such things as are indispensable. Having regard to the situation and circumstances of this plaintiff, and judging them in the light of what I regard the primary intent as expressed in the provision under consideration, and considering as well the proportion the charge bears to the value of the property, I am of opinion that commuting the maintenance charged in the deed, its fair equivalent would be $12.50 per month, or, at the rate of $150 per annum.

There is nothing in the provision which indicates that the beneficiary in order to be entitled to the maintenance, was to reside upon the land. In the absence of all expressed qualifications it would be an arbitrary conclusion to hold that a restricted maintenance was intended, and considering how uncertain, incomplete and unsatisfactory such maintenance might easily become, under repeated alienations of the land, were this widow to be regarded as a vassal it is manifest that any such construction would defeat the whole purpose of the provision.

All the objections which are urged against this feature of the plaintiff's claim are fully met in the case of Steele's Appeal, supra, where it is said: "As the widow was not limited or restricted to any particular place to receive the maintenance provided by the will, it was the duty of those charged with furnishing it, to furnish or tender performance to her where she might be living, or where she might choose, and so far as this has not been done, the petitioner is entitled to a decree in her favor. The charge was in the nature of a debt, which the debtor, in order to discharge himself of, must seek the creditor, and perform, or offer to perform, his obligation." The same authority fully meets the objection that the charge was personal to Smith, the grantee, and did not extend to his alienees. It is unnecessary to quote further, however.

I am of opinion, and so find, that (1) the land purchased by these defendants from the assignee of A. L. Smith, and which was embraced in the deed of conveyance of August 30, 1890, from said Daniel Bonebrake and wife to said A. L. Smith, is subject to the provision for maintenance contained in said deed of conveyance; (2) that this maintenance now of Rebecca Bonebrake, her husband having died, commuted, is of the monthly value of $12.50; (3) that this maintenance has been omitted since the first day of March, 1896; (4) that these defendants, the present owners of said land, should be required to make good what has been omitted, and from this time forth pay over to said Rebecca Bonebrake the money value of said maintenance, as already ascertained, in quarterly payments, the first of said payments to be made on the first day of May next, and quarterly thereafter; (5) that said charge should be apportioned on the present subdivisions of said land in the proportion that the purchase money paid for each at the assignee's sale bears to the whole amount for which the land was sold, and be charged thereon accordingly.

And now, April 28, 1897, let a decree be prepared in accordance with the views herein expressed, and be submitted. The findings herein and conclusions to become absolute in (30) thirty days from this date unless exceptions be filed thereto.

Exceptions to the findings of fact and conclusions of law of the court were filed on behalf of the defendants.

1. The court erred in not finding the following facts in addition to those found: (*a*) That at the time when Abraham L. Smith assigned for the benefit of his creditors, to wit: on the 23d of March, 1895, the only real estate which he owned was the farm conveyed to him by Daniel Bonebrake and wife, by deed of August 30, 1890; (*b*) that the said farm was sold under an order of the court of common pleas of this county issued by virtue of the provisions of the act of assembly relating to assignments, approved February 17, 1876, P. L. 4, and that the land was sold for the payment of the liens in existence at the time of the conveyance from Bonebrake to Smith (amounting at the time of the assignment to $1,415 with interest from April 1, 1894, and costs), as well as for the payment of the subsequent liens and debts; (*c*) that the aforesaid liens (referred to in the second and fifth findings of fact) were set out in the petition of

the assignee for an order of sale of said real estate, and that the order of sale was asked for in order to pay said liens as well as the subsequent liens ; (*d*) that as to the Row mortgage above mentioned, the assignee in his return of sale, reported that the mortgagee, Levi C. Row, who was one of the purchasers of said land at the assignee's sale, was entitled to receive the amount of said mortgage, remaining unpaid, out of the proceeds of said sale, and that he had taken his receipt for the same ; and that the sale as so returned by the assignee was confirmed by the court ; [ (*e*) that the amount of the two judgments of $500 each, and the Row mortgage of $1,300, given by Daniel Bonebrake while he still owned the said land, and which were liens against it on August 30, 1890, when it was conveyed to Smith was deducted from the purchase price of $3,000, and that the same was the proper debt of the said Abraham L. Smith] [1]; (*f*) that the maintenance of Rebecca Bonebrake, the plaintiff, as contemplated by the parties when the deed of August 30, 1890, was made, can be furnished and supplied to her at a cost of from $75 to $100 per annum.

2. [The court erred in its first conclusion of law in holding that by the language in the deed from Bonebrake to Smith, recited in the first finding of fact, a continuing lien was created upon said land in favor of the grantors.] [4]

3. [The court erred in its second conclusion of law in holding that the said supposed lien survived the sale by the assignee and the confirmation thereof, and that the same still remains a lien upon the land in the hands of its present owners.] [5]

4. [The court erred in its third conclusion of law in holding that the sale of the land by the assignee under the order of the court, and the confirmation of said sale by the court, did not discharge the land from the lien created by the said reservation in the deed of August 30, 1890.] [6]

5. [The court erred in its fourth conclusion of law in holding that the court sitting in equity has jurisdiction of the subject-matter of this controversy.] [7]

6. [The court erred in its fifth conclusion of law in holding that Rebecca Bonebrake, the plaintiff, is entitled to maintenance out of said lands in the hands of the present owners.] [8]

7. [The court erred in holding that A. L. Smith is not primarily liable for the support and maintenance of the plaintiff, under the provisions of the reservation in the deed of August 30, 1890.] [9]

8. [The court erred in fixing the amount to be paid by the defendants for the support and maintenance of the plaintiff at $150 per annum.] [10]

9. The court erred in entering its decree of April 28, 1897, requiring the defendants to pay to Rebecca Bonebrake the sum of $150 per annum (or any sum whatever) for her maintenance and support.

Whereupon the court delivered the following supplemental findings and order:

The order we made in this case was that the findings of fact and law should be conclusive unless exceptions were filed thereto within thirty days after the order made. We deemed this order but fair, since neither side had submitted any requests for findings, and we desired that the whole case be fully presented. Exceptions have been filed on behalf of the defendants. So far as these relate to the facts of the case they amount simply to a request for additional findings, and we now supplement our original findings as follows:

### SUPPLEMENTAL FINDINGS.

9. At the time when Abraham L. Smith assigned for the benefit of creditors, to wit: March 23, 1895, the only real estate which he owned was the farm conveyed to him by Daniel Bonebrake and wife, by deed of August 30, 1890.

10. The said farm was sold under an order of the court of common pleas of this county, issued under the provisions of the act of assembly relating to assignments, approved February 17, 1876; it was sold for the payment of the liens in existence at the time of the conveyance from Bonebrake to Smith (amounting at the time of the assignment to $1,415, with interest from April 1, 1894, and costs), as well as for the payment of subsequent liens and debts.

11. The above mentioned liens were set out in the petition of the assignee for an order of sale of said real estate, and the order was asked for to pay said liens, as well as those subsequently acquired.

12. The assignee in his return of sale reported that Levi C. Row, mortgagee, and one of the purchasers at the assignee's sale, was entitled to receive the amount of said mortgage remaining unpaid, out of the proceeds of said sale, and that he had taken his receipt for the same. The sale so returned was confirmed by the court.

13. We decline to find as requested that "the amount of the two judgments of $500 each, and the Row mortgage of $1,300 given by Daniel Bonebrake while he still owned the land, and which were liens against it Aug. 30, 1890, when it was conveyed to Smith was deducted from the purchase price of $3,000, and that the same was the proper debt of the said Abraham L. Smith." There is nothing in the evidence to base any such finding upon.

We have fully considered the exceptions filed to the conclusions of law. It is enough to say, without further discussion, that we adhere to the conclusions reached, and now, June 1, 1897, the exceptions are dismissed and decree entered.

### DECREE.

[And now, June 1, 1897, it is ordered, adjudged and decreed that the lands purchased by Benjamin R. Summers, Levi C. Row, Christian Avery Miley and Samuel S. Hess, the above named defendants, from Michael G. Minters, assignee of A. L. Smith, which was embraced in the deed of conveyance from Daniel Bonebrake and wife to the said A. L. Smith, dated August 30, 1890, and set forth in the plaintiff's bill, is subject to the provision for maintenance contained in said deed of conveyance, and the said maintenance now of Rebecca Bonebrake is of the monthly value of twelve and 50–100 ($12.50) dollars, and that the said defendants owe to the said Rebecca Bonebrake twelve and 50–100 ($12.50) dollars for each and every month since the first day of March, A. D. 1896.

And it is further adjudged and decreed that the said Benjamin R. Summers and Levi C. Row pay forthwith to the said Rebecca Bonebrake the sum of one hundred and fifty-seven and 88–100 ($157.88) dollars; that the said Christian Avery Miley pay forthwith to the said Rebecca Bonebrake the sum of eight and 10–100 ($8.10) dollars and that the said Samuel S. Hess pay forthwith to the said Rebecca Bonebrake the sum of nine

and 2-100 ($9.02) dollars, which payments shall be in full of her maintenance to May 1, A. D. 1897.

And it is further adjudged, ordered and decreed that the said Benjamin R. Summers and Levi C. Row pay to the said Rebecca Bonebrake on the first day of August, A. D. 1897, the sum of thirty-three and 85-100 ($33.85) dollars; that the said Christian Avery Miley pay to the said Rebecca Bonebrake on the first day of August, A. D. 1897, the sum of one and 73-100 ($1.73) dollars and that the said Samuel S. Hess pay to the said Rebecca Bonebrake on the first day of August, A. D. 1897, the sum of one and 82-100 ($1.82) dollars, and that they each pay to her a like amount at the end of every three months thereafter so long as she, the said Rebecca Bonebrake, shall live.

And it is further ordered, adjudged and decreed that the said defendants pay the costs of this proceeding.] [12]

Defendants appealed.

*Errors assigned* were (1) in overruling exception 1 (*e*) filed on the part of defendants to the finding of fact, reciting said exception and ruling. (2) In the court's first conclusion of law, reciting same. (3) In holding that "this charge survived the sale by the assignee and still remains a lien upon the land in the hands of its present owners." (4) In overruling exception filed by defendants to their first conclusion of law, reciting same. (5) In overruling exception filed by defendants to their second conclusion of law, reciting same. (6) In overruling exception filed by defendants to their third conclusion of law, reciting same. (7) In overruling exception filed by defendants to their fourth conclusion of law, reciting same. (8) In overruling exception filed by defendants to their fifth conclusion of law, reciting same. (9) In overruling seventh exception filed by defendants, reciting same. (10) In overruling eighth exception filed by defendant, reciting same. (11) In the fifth conclusion of law in holding that "there is nothing in the provision which indicates that the beneficiary, in order to be entitled to the maintenance, was to reside upon the land." (12) In entering the decree of June 1, 1897, reciting same.

*W. U. Brewer* and *O. C. Bowers*, with them *William Alexander*, for appellants.—The plaintiff has mistaken her remedy.

Equity is without jurisdiction in this case. It would not be pretended that if Smith, while he owned the land, had broken this covenant there could have been redress in equity. The remedy would have been a suit at law: Kauffman v. Kauffman, 2 Wharton, 139; Shelly v. Shelly, 8 W. & S. 153; De-Haven v. Bartholomew, 57 Pa. 126; Walb v. Snyder, 155 Pa. 167; Rohn v. Odenwelder, 162 Pa. 346.

It is submitted that plaintiff's remedy is assumpsit: Blood v. Crew-Levick Co., 171 Pa. 339.

The court will of its own motion dismiss a bill in equity when it is apparent the case is one not cognizable in equity: Weaver v. Shenk, 154 Pa. 206; Jinks v. Banner Lodge, 139 Pa. 414.

In the case of Wright v. Gas Co., 2 Pa. Superior Ct. 219, Judge ORLADY lays down the rule we invoke: " So long as parties call upon courts of justice to administer their contracts, they must expect them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed, and to this end, courts take the language employed and apply it to the surrounding circumstances exactly as they believe the parties applied it: " Barnhart v. Riddle, 29 Pa. 92; Graver v. Scott, 80 Pa. 88; Irvin v. Irvin, 142 Pa. 271.

If there had been any allegation that the defendants purchased the land expressly subject to the charge, they were entitled to have that question passed upon by the jury or the court. So much is distinctly ruled in the case of Tospon v. Sipe, 116 Pa. 588. To the same effect is the case of Brownback v. Ozias, 117 Pa. 87.

*Walter K. Sharpe*, with him *W. Rush Gillan*, for appellee.— Jurisdiction in equity depends not so much on the want of a common-law remedy as upon its inadequacy, and its exercise is a matter which often rests in the discretion of the court: Bierbower's Appeal, 107 Pa. 14; Harper's Appeal, 109 Pa. 9; Appeal of Brush Electric Co., 114 Pa. 574.

In Kirkpatrick v. McDonald, 11 Pa. 387, it was said that the equitable remedy may be adopted solely on the ground that it is more convenient than an action of assumpsit. To the same effect is Johnston v. Price, 172 Pa. 427. A remedy in

which a single judgment would not at once and forever end the controversy would nowhere be regarded as complete and adequate: Mortland v. Mortland, 151 Pa. 593.

" Nevertheless the maintenance of Daniel Bonebrake and Rebecca, his wife, during their natural life is a part of the consideration herein mentioned, therefore this title does not become clear of all incumbrances until at the death of the said Daniel Bonebrake and Rebecca his wife." There is no escape from the force and effect of such words. A charge is created in the title running with the land: Hiester v. Green, 48 Pa. 96; Heist v. Baker, 49 Pa. 9; Strauss's Appeal, 49 Pa. 353; Eichelberger v. Gitt, 104 Pa. 64; Rohn v. Odenwelder, 162 Pa. 346.

But the appellants insist that this charge was divested by the assignee's sale: Luce v. Snively, 4 Watts, 396; Dewalt's Appeal, 20 Pa. 236; Helfrich v. Weaver, 61 Pa. 385; Rohn v. Odenwelder, 162 Pa. 346.

OPINION BY BEAVER, J., July 29, 1898 :

Assuming that all the findings of fact and conclusions of law, including the supplemental findings, will be fully set forth in the report of this case, it is not proposed to traverse the ground so fully and satisfactorily covered by the president judge of the court below. Considering the three propositions made by the appellants in their argument, which fully cover all the assignments of error, we turn our attention first to the question of jurisdiction.

The court below very properly took cognizance of the case in equity. An action of assumpsit might have been maintained against each one of the purchasers of the several parts of the tract of land conveyed by Bonebrake to Smith and sold by Smith's assignees, but this would have resulted in a multiplicity of actions. If suit had been brought against one and a recovery had for the entire amount claimed by the plaintiff and payment had been enforced against him out of the portion of the land which he purchased, a bill in equity against the other three for contribution would almost necessarily have resulted in case of their failure or refusal to pay their ratable proportion of such judgment. In an action of law judgment could have been rendered only for such an amount as was due and unpaid at the time of the commencement of the action. The legal remedy

was undoubtedly available but was utterly inadequate not only for the purpose of securing the plaintiff's rights but of apportioning the burdens, thereby imposed upon the defendants, among themselves: Bierbower's Appeal, 107 Pa. 14.

As to the second proposition that the plaintiff was entitled to maintenance, under the covenant contained in the deed of Bonebrake and wife to Smith, only upon the land conveyed, there is nothing in the language which necessitates or even warrants such a conclusion and there is nothing in the subsequent conduct of the plaintiff in remaining upon the land, whilst her daughter lived there, which would conclude her and prevent her living elsewhere. In other words, the plaintiff was not a fixture to be passed by delivery with the sale of the land. To so hold would probably be a burden from which the appellants themselves would be the first to seek relief: Steele's Appeal, 47 Pa. 437.

The appellants' third proposition is that the sale by Smith's assignee, under an order of the court of common pleas, by virtue of the act of assembly of February 17, 1876, of the land conveyed by Bonebrake to Smith, subject to several prior liens which were discharged by the said sale, also discharged the said land from the reservation or charge in favor of the plaintiff contained in the said deed. This question is fundamental. It is not necessary for us to consider it at length, inasmuch as it is exhaustively treated by the president judge of the court below. It is to be observed, however, that the assignee sold only such title as Smith had. It is true, as claimed by the appellants, that, if the lien creditors of Bonebrake had sold the land under judicial proceedings based upon their liens, the charge contained in the deed from Bonebrake to Smith would have been divested but this divestiture would have taken place, because they were in a position to sell Bonebrake's title. Instead of doing this, however, they allowed themselves, by their acquiescence in the petition of the assignee for the sale of Smith's estate, to be confined for the time being at least to the proceeds of that sale for the payment of their liens. They were interested in the sale as lien creditors only to the extent of the payment of their liens. If the sale had failed to realize sufficient to pay their liens, they might have resorted to the Bonebrake estate, but the necessity for resorting thereto passed, when the bid at

the assignee's sale exceeded the amount of their liens. No wrong was done them, therefore, as lien creditors and they make their objection now as would any other purchaser at the assignee's sale.

It is important, therefore, to consider the estate which Smith took by the deed from Bonebrake and wife to him. The charge, reservation or condition upon which the conveyance was made, as contained in the deed itself, is: " Nevertheless the maintenance of Daniel Bonebrake and Rebecca, his wife, during their natural life is a part of the consideration herein mentioned; therefore this title does not become clear of all encumbrance, until at the death of the said Daniel Bonebrake and Rebecca, his wife." It is admitted that Smith took the title to the land conveyed subject to this charge or reservation but it is claimed that it was divested by the sale. The late case of Rohn v. Odenwelder, 162 Pa. 346, and the later one of Ringrose v. Ringrose, 170 Pa. 593, in which the earlier cases are fully discussed and cited, clearly establish the doctrine that " parties may, by clear and express words in deeds of conveyance, create liens upon land, either for purchase money or for the performance of collateral conditions, which will be binding between themselves and their privies and such liens will not be divested by subsequent judicial sales where they are in the nature of testamentary provisions for wives and children or are incapable of valuation or are expressly created to run with the land." In the former case it was held that such a provision was not divested by a sheriff's sale and in the latter that it was not divested by an orphans' court sale. We see no difference in principle between a sheriff's or orphans' court sale and an assignee's sale, under the Act of the 17th of February, 1876, P. L. 4. The object of this act seems to have been to make a sale by an assignee similar in its effects, when the provisions of the act were complied with, to those of other judicial sales. In both of these cases there was the additional element not present in the case under consideration, namely, the use and occupancy of a part or the whole of the dwelling house, but such a provision is not essential to the life or validity of the general principle.

The only question remaining, therefore, is as to whether or not the reservation or covenant which we are considering is of such a character as to come within the rule so fully and repeat

edly laid down by our Supreme Court.   As to this there can be little doubt.   It is clear that the grantors intended to make permanent provision for their maintenance and that of the survivor during life.   The amount is indefinite, the time indeterminate; it is, therefore, impossible to place a fixed value upon the charge thus created.   It was also intended to run with the land. " Therefore, this title does not become clear of all incumbrances, until at the death of the said Daniel Bonebrake and Rebecca, his wife, " can admit of no other interpretation.   The appellants bid at an open sale at which the conditions were clearly made known and of which they must be presumed to have had knowledge.   They accepted deeds by the terms of which their title was made subject to the charge or reservation contained in the deed from Bonebrake and wife to Smith.   They are to be presumed as having knowledge of what was contained in their deeds; and, having accepted them and now claiming under them, in the absence of fraud or mistake, neither of which is alleged, are bound by their contents.   It is clear that Bonebrake could not have made the reservation in his deed to Smith at the expense of his lien creditors.   They could have at any time sold his entire estate.   It is equally clear that he could not have made the reservation at the expense of ordinary creditors.   This would have been in violation of the statute of 13th Elizabeth in regard to fraudulent conveyances.   But these questions do not in any way enter into the consideration of the case.   What did Smith's assignee convey?   Clearly nothing but Smith's estate and this was bound, as we have seen, by the charge upon the land which was evidently intended to run with the land and be a charge upon the title.

A careful examination of the entire case has failed to convince us of any error committed by the court below or of any real injustice resulting to the appellants by the decree of which they complain.

Decree affirmed.